730 F.2d 929
 Leona P. BOILEAU, Appellant,
v.
BETHLEHEM STEEL CORPORATION, Bernard V. O'Hare, Esq., Blank,
Rome, Klaus & Comisky, Joanne N. Casilio, Fernando P.
Casilio and John F. Casilio, Co-partners t/a Frank Casilio &
Sons, John Chilton, Dorothy Lorraine Chilton, Henry R.
Bandelin, Merrile F. Bandelin, Willard H. Renninger, Alice
F. Renninger, Stephen G. Doncevic, Mary D. Doncevic, Donald
F. Eismann, Helen O. Eismann, Benjamin C. Queen and Norma L. Queen.
 No. 83-1251.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 15, 1983.
Decided March 28, 1984.
As Amended May 1, 1984.
 
 Cletus P. Lyman (argued), Richard A. Ash, Lyman & Ash, Philadelphia, Pa., for appellant.
 John G. Harkins, Jr. (argued), Deborah F. Cohen, James M. Beck, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees Bethlehem Steel Corp. and Blank, Rome, Comisky & McCauley.
 James J. McCabe, Lewis R. Olshin, Duane, Morris & Heckscher, Philadelphia, Pa., for appellee Bernard V. O'Hare.
 Before ADAMS, BECKER and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 This appeal raises difficult questions concerning the appropriate forum for the adjudication of a challenge to a consent decree alleged to have violated the due process rights of the plaintiff. The difficulties arise from the need to evaluate complex and interrelated claims brought before state courts and a federal district court sitting in diversity jurisdiction. In particular, this appeal requires that we determine what preclusive effect a state court denial of a petition to strike a judgment should have on a related federal court diversity action and the procedural right of a party to amend a complaint to reflect intervening changes of decisional law. The district court (a) held that a state court denial of a petition to strike barred diversity litigation on a collateral action, (b) denied a motion to amend the complaint, and (c) granted summary judgment for the defendants. We now vacate that judgment and remand this case for further proceedings.
 
 I.
 
 2
 The present action arises as a challenge to a consent decree between Bethlehem Steel and Henry Boileau, the husband of the plaintiff. Mr. Boileau was an employee of Bethlehem Steel between 1957 and 1971, reaching the position of manager of real estate and municipal services prior to his departure. According to his affidavit of August 16, 1978, Boileau was directed by Bethlehem Steel in 1968 to create a "slush fund" whereby corporate funds would "disappear" through a series of fictitious transactions and thereby become available for cash bribes. In his words, "I was responsible for bribery at all levels of government," particularly the city council aldermen of Chicago. App. at 228-29.[1]
 
 
 3
 According to Boileau, corporate funds were filtered through a number of companies which he set up to return untraceable cash to Bethlehem's coffers.[2] These transactions did not escape detection by the Internal Revenue Service, and on January 12, 1972, Boileau was indicted on four counts of tax evasion. United States v. Boileau, No. 72-17 (E.D.Pa.1972). Immediately thereafter, on January 14, 1972, Bethlehem, charging embezzlement of company funds, initiated proceedings in the Common Pleas Court of Bucks County, Pennsylvania, against Boileau and these companies, as well as other individuals. Bethlehem Steel v. Tri State Industries, Inc., et al., No. 72-355-05-1 (Ct.Common Pleas, Bucks County, 1972).
 
 
 4
 In his reply to Bethlehem's complaint, Boileau charged that the state court actions against him were instituted so that Bethlehem could avoid tax liability and forestall a threatened shareholder suit for diversion of corporate funds. Although Boileau claimed that all payments to his companies or to others were made with the authorization of his superiors, he nonetheless entered into a consent decree that ceded all his property to Bethlehem Steel. Bethlehem Steel v. Tri State Industries, Inc., Nos. 72-355-09-1, 72-356-09-2, 72-488-08-5 (Ct. of Common Pleas, Bucks County, June 21, 1972).
 
 
 5
 The consent decree also transferred to Bethlehem Steel all the joint property of Boileau and his wife, Leona Boileau, the plaintiff in the present action. The crux of Mrs. Boileau's claim is that at the time judgment was entered she and her husband were separated and that her share of jointly held property was conveyed to Bethlehem without her knowledge, without her consent, and without due process of law. She asserts that she was not a party to the 1972 proceedings and that the property transferred to Bethlehem was traceable, at least in part, to her own savings and not to any funds that ever belonged to Bethlehem Steel.
 
 
 6
 According to Mrs. Boileau's affidavit of May 6, 1982, she and her husband first purchased land in Barrington, New Jersey on February 11, 1952; the purchase was made with the couple's joint savings. App. at 380-81. The Boileaus sold this property on June 18, 1958, and in 1961 purchased 99 acres of land in Northampton County, Pennsylvania. In 1965, the Boileaus sold ten acres of the Northampton property and purchased a Bucks County farm that was eventually conveyed to Bethlehem Steel, along with the remaining Northampton property. Id. These averments of Leona Boileau are supported in full by the affidavit of Henry Boileau of May 7, 1982. App. at 382-85. Significantly, he adds that the final real estate purchase made by the couple in 1965 occurred prior to his involvement with any of the companies named in either the 1972 tax evasion indictment or the 1972 suit filed against him by Bethlehem Steel.
 
 
 7
 In her affidavit of August 25, 1978, Leona Boileau declared that she moved from Pennsylvania to Providence, Rhode Island on or about January 1, 1972. App. at 230. As of 1978, she worked as a clerical employee at Brown University, earning about $8,100 per year. She had lived with her sister since moving to Rhode Island, and, aside from the assets claimed in this law suit, she had property worth less than $400. Id. At the time the present lawsuit was filed in 1978, Mrs. Boileau was 62 years old.
 
 II.
 
 8
 Bethlehem Steel initiated an action in trespass and assumpsit against Henry Boileau in the Bucks County Common Pleas Court on January 14, 1972. On January 18, 1972, Bethlehem filed a second suit, this one in equity, against Henry and Leona Boileau seeking a lien against their properties in Bucks and Northampton Counties equal in value to the funds that Bethlehem alleged Henry Boileau had diverted. In particular Bethlehem's complaint in the equity suit claimed:
 
 
 9
 [Henry] Boileau has made or caused the defendants to make extensive expenditures, inter alia, for rare and expensive antiques, horses, real estate, travel and business enterprises, domestic and foreign investments, and deposits in bank accounts....
 
 
 10
 App. at 133. Mrs. Boileau was not named in the trespass and assumpsit action filed by Bethlehem.[3]
 
 
 11
 Mr. Boileau retained Bernard O'Hare, Esq., to represent him before the state court. Although Mrs. Boileau was not in Pennsylvania at the time and although she claims she was never served with process, Mr. O'Hare entered appearances on behalf of both Mr. and Mrs. Boileau. Mr. O'Hare subsequently acknowledged in court that Mrs. Boileau had not retained him and that his "appearance on behalf of Mrs. Boylou [sic] had been entered ... on the assumption that I was authorized to do so." App. at 203. Mrs. Boileau claims, "I never asked or authorized Attorney O'Hare to represent me in that action or in any other legal matter." Affidavit of Leona Boileau, July 25, 1978; App. at 223.
 
 
 12
 In June 1972, Mr. Boileau and attorney O'Hare appeared before Judge William Hart Rufe III of the Bucks County Court, together with Edwin P. Rome, Esq., of the law firm of Blank, Rome, Klaus & Comisky, and other lawyers representing Bethlehem Steel. Judge Rufe, referring to the complexity and magnitude of the cases, encouraged the parties to settle the controversy. On June 21, 1972, Mr. Boileau and Bethlehem announced to the court that they were prepared to consolidate the two actions and settle the entire matter.[4] The settlement provided for the transfer of all property owned by Mr. and Mrs. Boileau to Bethlehem.[5] Judge Rufe entered judgment pursuant to the settlement on June 21.
 
 
 13
 In her affidavit of July 25, 1978, Leona Boileau asserts the following:
 
 
 14
 3. Bethlehem Steel Corporation ("Bethlehem Steel") never served a complaint on me in the consolidated actions in Bucks County. I had no notice of the filing of the complaint against me before judgments were entered against me on June 21, 1972.
 
 
 15
 4. I now understand (but I did not know on or before June 21, 1972) that Bernard V. O'Hare, Esquire, filed a "praecipe for appearance" on February 18, 1972, purporting to appear on my behalf. I never asked or authorized Attorney O'Hare to represent me in that action or in any other legal matter.
 
 
 16
 5. I was not told of the proposal to have judgments entered against me prior to their entry on June 21, 1972, and I gave no consent to the entry of such judgments in advance.
 
 
 17
 6. After the judgments were entered on June 21, 1972, in about July, 1972, I came from Providence, Rhode Island, to Pleasant Valley, Buck County, Pennsylvania at the request of my husband, Henry L. Boileau. Attorney O'Hare came to the home my husband and I had occupied before I moved to Rhode Island, and he told me for the first time that judgments had been entered against me in the Court of Common Pleas in Bucks County.
 
 
 18
 7. I protested that the entry of these judgments was without my knowledge or consent, that, up until that time, I was not aware of the allegations made against me by Bethlehem Steel, that the allegations were without any factual basis, that I refused in any manner to ratify these judgments after the fact, that Attorney O'Hare never represented me or had authority to act on my behalf, and that he had no authority in the future to represent me or act on my behalf.
 
 
 19
 8. Mr. O'Hare asked me to sign a release in favor of Bethlehem Steel, which he explained was part of the settlement worked out between Bethlehem Steel and my husband. I refused to sign this release.
 
 
 20
 App. at 222-24.
 
 
 21
 On July 17, 1972, Mr. O'Hare reported Mrs. Boileau's rejection of the terms of the consent decree to Bethlehem's counsel. Specifically, Bethlehem was informed that Mrs. Boileau would not agree to sign the deeds transferring her property to Bethlehem. According to a transcript of a hearing that took place before Judge Rufe on August 14, 1972, the parties had on July 21, 1972 alerted the court to Mrs. Boileau's refusal to participate. App. at 198. Judge Rufe designated August 14 as the date of the property transfer and directed the prothonotary of the court to convey the property in Mrs. Boileau's stead, should she not appear. The court's appointment of the prothonotary was pursuant to 21 Pa.Stat.Ann. Sec. 53 (Purdon 1982) which provides:
 
 
 22
 In any proceedings at law or in equity, in any of the courts of this commonwealth having jurisdiction, if the said court shall order a conveyance to be executed by either of the parties to the said proceeding of his or her interest in any lands or tenements to any other party or person, and the party so ordered shall neglect or refuse to comply with the said order and make the said conveyance, or shall die, flee the jurisdiction, or become insane without having complied therewith, it shall be lawful for the said court to order and direct that such conveyance be made by the sheriff, prothonotary or clerk, or by a trustee specially appointed for that purpose....
 
 
 23
 At the August 14 hearing, the court was informed that no formal notice of that day's proposed conveyance had been served on Mrs. Boileau. App. at 204-208. Notwithstanding the lack of notice and Mr. O'Hare's specific disavowal of any authority to represent Mrs. Boileau, the court proceeded to direct conveyance of title of the Boileau's property to Bethlehem, except that the sheriff rather than the prothonotary was ordered to sign the deed on Mrs. Boileau's behalf. App. at 209.
 
 III.
 
 24
 According to the record, there were no further proceedings in this case until 1978. On June 20 of that year Mrs. Boileau, represented by counsel for the first time in any of these proceedings, took two separate actions: she filed a petition to strike the judgment in the Bucks County Court of Common Pleas, and she filed the present diversity action in federal district court. In the federal court action, defendants moved for summary judgment or, alternatively, for a stay of the proceedings, pending resolution of the state court action. On October 16, 1978, the federal court denied the summary judgment motion, but, on motion of the defendants, stayed its proceeding, pending final resolution of the petition to strike the judgment in state court.
 
 A.
 
 25
 Mrs. Boileau presented her petition to strike the judgment to Judge Rufe. She claimed, first, that she had never been served and therefore that the court lacked jurisdiction to enter judgment against her and, second, that an unauthorized appearance had been filed on her behalf by Mr. O'Hare. The court determined that under Pennsylvania law, a motion or petition to strike could only be considered on the basis of facts appearing on the face of the record and that no additional evidence could be admitted. Lipshutz v. Plawa, 393 Pa. 268, 141 A.2d 226 (1958). On the face of the record, the court concluded:
 
 
 26
 According to the Sheriff's return, the writ of summons in equity was served personally on Leona Boileau on January 31, 1972. Subsequently, Attorney Bernard V. O'Hare, Jr., entered an appearance on her behalf. Thus authorized, Attorney O'Hare negotiated a settlement agreement with Bethlehem on behalf of his clients. The agreement was submitted to and accepted by the Court and judgments were entered based thereon. Certain documents were later executed on her behalf, by order of Court, pursuant to statutory authority....
 
 
 27
 Leona Boileau's remaining challenges: that she was never served with a complaint; that she never received notice of the proposed entry of judgments; that no evidence was presented to support the allegations of the complaint; that there exists no factual or legal basis for the judgments and that Mrs. Boileau never consented to entry of the judgments, would require the Court to go beyond the face of the record. As a result, these challenges are inappropriately brought by a petition to strike the judgments.
 
 
 28
 Order and Opinion of June 6, 1979; App. at 239-41.
 
 
 29
 On appeal, the Superior Court of Pennsylvania took a more cautious approach to the question of Bernard O'Hare's unauthorized representation of Mrs. Boileau and the validity of the ensuing consent decree. Bethlehem Steel Corp. v. Tri State Industries, Inc., 290 Pa.Super. 461, 434 A.2d 1236 (1981). The Superior Court found that the entry of an unauthorized appearance was not a jurisdictional defect and, therefore, did not automatically render any subsequent judgment void; rather, it said the consent judgment was voidable only. The Superior Court acknowledged that there was no case law governing "voidable" as opposed to "void" consent judgments. By analogy, however, the Superior Court turned to petitions to strike unauthorized confessed judgments entered into by one party to a partnership. See Sterle v. Galiardi Coal and Coke Co., 168 Pa.Super. 254, 77 A.2d 669 (1951). Under the confessed judgment case law, the effects on the non-consenting party in the partnership of an otherwise binding confessed judgment could be voided upon timely and proper petition to the court. The confessed judgment doctrine, however, is premised upon the presumption of agency between partners acting in the name of a partnership. Despite the fact that the claimed absence of any relationship between Mr. O'Hare and Mrs. Boileau was the basis of the petition to strike and that this defeated any presumption of agency, the Superior Court proceeded to hold the doctrine of voidable judgments applicable to the present dispute. The Superior Court then accepted for the first time in a Pennsylvania case the tentative draft of the Restatement (Second) of Judgments that imposed a time bar to a petition to strike. Thus, the Superior Court held that Judge Rufe's dismissal of the petition to strike because of the lapse of time was not erroneous, significantly, it made no reference to the merits of the dispute or to an equitable action to open. The Pennsylvania Supreme Court affirmed without opinion.
 
 B.
 
 30
 The federal litigation arose in a different procedural posture than the state court proceedings. Rather than appearing as a defendant seeking relief from a judgment allegedly entered improperly, as she did in the state proceeding, Leona Boileau in the federal case is a plaintiff seeking compensatory and punitive damages against Bethlehem, its attorneys, and Bernard O'Hare.[6] Federal jurisdiction was premised on the diversity of citizenship between Mrs. Boileau, a citizen of Rhode Island, and the Pennsylvania defendants. 28 U.S.C. Sec. 1332 (1976). In addition, following the resumption of the federal proceeding in March 1982, Mrs. Boileau sought to amend her complaint to invoke federal question jurisdiction under 28 U.S.C. Secs. 1331 and 1343, based upon a claim that Bethlehem Steel, its attorneys, and Judge Rufe engaged in joint ventures violating Mrs. Boileau's civil rights protected by 42 U.S.C. Sec. 1983.
 
 
 31
 On March 14, 1983, the district court granted summary judgment in favor of Bethlehem Steel and Blank, Rome. The district court held Mrs. Boileau was barred by the res judicata effect of the state court judgments from pressing her claim against Bethlehem Steel and that collateral estoppel precluded relitigation of her entitlement to the real estate and the validity of the 1972 judgment. The district court--based solely upon "the protracted years of this complex litigation"--also exercised its discretion to deny Mrs. Boileau's motion to amend her complaint so as to state a cause of action under 42 U.S.C. Sec. 1983. Boileau v. Bethlehem Steel, No. 78-2078 (E.D.Pa.1983) mem. op. at 15. The court expressed its belief that the Sec. 1983 action was without merit; however its stated reasons for the denial of the amendment would appear to render this discussion dicta and therefore not controlling on the merits of the proposed amendment.[7]
 
 IV.
 
 32
 Mrs. Boileau's federal action against Bethlehem Steel and the other named defendants raises complex issues of overlapping rights and remedies between state and federal court proceedings as well as the threshold requirement of state action necessary for a Sec. 1983 claim. Mrs. Boileau also alleges the potential compromising of state court impartiality through campaign contributions to candidates for the judiciary by certain defendants while litigation was pending. We need not address these difficult issues today, except insofar as they are directly relevant to the district court's grant of summary judgment. The limited inquiry before us is, rather, (1) whether the state court judgment should properly have precluded a federal hearing on the merits of Mrs. Boileau's claim, and (2) whether the district court abused its discretion in not allowing amendment of the complaint.
 
 A.
 
 33
 The central question in evaluating the district court's grant of summary judgment is whether Mrs. Boileau had a "full and fair opportunity" to litigate the issues presented on this appeal on the merits before the state tribunals. See Kremer v. Chemical Construction Corp., 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982) (state court ruling must satisfy requirements of due process before it can be awarded full faith and credit); Federated Dep't Stores v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) (final judgment on the merits basis for issue preclusion); Allen v. McCurry, 449 U.S. 90, 94-96, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308 (1980) (federal courts will adhere to principles of res judicata and collateral estoppel only when a final adjudication on the merits took place or could have taken place in state court); Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).
 
 
 34
 We need not be detained by considerations of comity in this case. Federal court jurisdiction was invoked in the first instance based upon diversity of citizenship, thereby placing the district court in the same posture as a state court reviewing a collateral attack upon a prior state court judgment. Trust Co. of Chicago v. Pennsylvania R.R. Co., 183 F.2d 640 (7th Cir.1950). Because federal courts sitting in diversity jurisdiction act as arbiters under state law, the comity or federalism concerns that might otherwise govern the relation of state and federal proceedings on collateral matters have little or no bearing here. The justification for diversity jurisdiction is to allow an out-of-state plaintiff to receive a fair and impartial trial in a suit against a favored party of the forum state. Certainly this case, which involves a Rhode Island plaintiff and a large Pennsylvania corporation as the defendant, is a paradigm for diversity jurisdiction under the impartial tribunal rationale.
 
 
 35
 Under Allen v. McCurry, "collateral estoppel [and res judicata] cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the issue in the earlier case." 449 U.S. at 95, 101 S.Ct. at 415. Thus, Allen limits the effects of the preclusion doctrines to cases in which state courts "have recognized the constitutional claims asserted and provided fair procedures for determining them." Id. at 99, 101 S.Ct. at 417. Allen does not apply the doctrines of res judicata and collateral estoppel if state procedure in theory or practice was insufficient to allow full litigation of the constitutional claims pressed in the subsequent proceeding. Id. at 100-101, 101 S.Ct. at 417-18.
 
 
 36
 Mrs. Boileau challenges the adequacy of the state procedures on three separate grounds. First, she claims that the crux of her appeal rests on the failure of service that deprived the Bucks County court of in personam jurisdiction combined with the unauthorized entry of an appearance on her behalf by Mr. O'Hare. A legitimate exercise of jurisdiction by the state court and an authorized claim by Mr. O'Hare to represent Mrs. Boileau in settlement discussions, she avers, were necessary predicates to the state court's entry of judgment against her. However, because Mrs. Boileau proceeded by petition to strike, which, under Pennsylvania law, is limited to the facts on the record, and because improper service and an unauthorized entry of appearance would not appear on the face of the record, we must conclude that the state court proceedings did not constitute "full and fair" adjudication of the failure of service issue or the question of the unauthorized appearance entered by Mr. O'Hare and, therefore, did not resolve the merits of the dispute. Moreover, the governing Pennsylvania case law makes it clear that when a petition to strike is denied, there has been no adjudication on the merits of the dispute:While it is true the court might have treated the rule as one to open judgment and proceeded accordingly (Williams v. Notopolos, 247 Pa. 554, 93 Atl. 610), it was not bound to do so, and, in absence of a motion to amend, made by defendant, the rule was properly discharged, and such order is not in any sense a decision on the merits pleadable in bar of the present proceedings.
 
 
 37
 Bowman v. Berkey, 259 Pa. 327, 103 A. 49, 51 (S.Ct.Pa.1918).
 
 
 38
 Defendants in this action contend that even if the petition to strike did not afford Mrs. Boileau a full and fair opportunity to adjudicate the validity of the 1972 consent decree on the merits, she was obligated to file a motion to open in the state court. Ordinarily, where the federal action presents a collateral challenge to the validity of a state court ruling, this might be the case. We note, however, that the jurisdiction of the federal court was not invoked under a federal statute which allows for a challenge to the state court ruling. Rather, because Mrs. Boileau appears in federal district court under diversity jurisdiction, the federal tribunal stands in the same posture as a state court. Thus, there is no issue of failure to advance her claim in state court present here as an obstacle to federal court review. The filing of the federal action on the same day as the state court petition to strike preserved the federal diversity forum for adjudication on the merits of Mrs. Boileau's challenge to the 1972 consent order.[8]
 
 
 39
 In view of these considerations, it appears that the district court in granting summary judgment did not sufficiently evaluate whether the prior adjudication resolved or could have resolved the merits of Mrs. Boileau's claims; moreover, it did not conduct a hearing to explore these issues in any respect. It simply stated:
 
 
 40
 There is no doubt that there was a final judgment on the issue by the courts of Pennsylvania, and the plaintiff in this case was a party to the prior adjudication. The Bucks County court found that the plaintiff had a full and fair opportunity to litigate her claim in the state action and so stated in its opinion when the court denied her petition to strike the judgment.
 
 
 41
 Boileau v. Bethlehem Steel, No. 78-2078 (E.D.Pa.1983) mem. op. at 11. The district court did not deal in any way with Mrs. Boileau's claim that the state court judgment was not on the merits. Instead, it proceeded to hold that her right to challenge the judgments under Pennsylvania procedures "had been forfeited by the extensive passage of time." Id. As the district court acknowledged, however, less than six years had elapsed from the entry of judgment in the Bucks County court to the filing of Mrs. Boileau's complaint in the federal diversity action. The district court thus contravened this Court's determination that under Pennsylvania law, "tort actions where bodily injury is not the gist of the complaint ... would be subject to the six-year limitation period of 12 P.S. Sec. 31 [subsequently recodified as 42 Penna.Stat. Sec. 5527]." Davis v. United States Steel Supply, 581 F.2d 335, 339 (3d Cir.1978).
 
 
 42
 The second point raised by Mrs. Boileau flows directly from the first. Under Allen, a litigant may be denied a federal forum for the assertion of federal constitutional rights, if a state tribunal has both "recognized the constitutional claims asserted and provided fair procedures for determining them...." 449 U.S. at 99, 101 S.Ct. at 417. Mrs. Boileau's complaint in the federal action specifically alleged a lack of constitutionally mandated due process in the state proceedings prior to 1978. This constitutional claim was not adjudicated on the merits under the Pennsylvania procedures available to consider a petition to strike a judgment because such adjudication would have required investigation beyond the face of the record.
 
 
 43
 Mrs. Boileau's third contention raises claims concerning the integrity of the state court proceedings. Whereas the first and second grounds challenge the "fullness" of the opportunity to litigate on the merits in the earlier proceedings as required by Allen, the third point questions the "fairness" component of the preclusion doctrine.[9] Mrs. Boileau's allegations challenge the fundamental integrity of the Pennsylvania state court system and, if accepted, would create a federal due process cause of action for every alleged victim of judicial impropriety in the state courts. This matter, however, need not be addressed by this Court, at least in the present stage of this appeal; indeed it is not clear that the matter was appropriately presented in the district court. Rather, having employed the diversity jurisdiction of the district court, Mrs. Boileau raised these allegations to forestall any res judicata/collateral estoppel effects of the prior adjudication. Since we hold that the district court erred on other independent grounds in its res judicata/collateral estoppel ruling, we do not reach the question whether this third point could, if substantiated, serve as an independent bar to the preclusion doctrines.
 
 B.
 
 44
 Mrs. Boileau sought to amend her complaint upon resumption of the federal suit based on intervening changes in decisional law applicable to Sec. 1983 actions. When Mrs. Boileau's suit was originally filed in federal court the liability of private persons under Sec. 1983 was governed by Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970):
 
 
 45
 Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents, [quoting United States v. Price, 383 U.S. 787, at 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).]
 
 
 46
 Subsequently, Meyer v. Curran, 397 F.Supp. 512 (E.D.Pa.1975) held that a private individual who was deemed to have acted under color of state law together with a state official enjoyed the full immunities of that state official. Meyer thus limited liability under Adickes when the state official enjoyed immunity. Since the state action in the present case involved a state court judge enjoying absolute immunity, see Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 734-35, 100 S.Ct. 1967, 1975-76, 64 L.Ed.2d 641 (1980) (and cases cited therein), Meyer could be read as precluding a Sec. 1983 action.
 
 
 47
 In November 1980, during the stay of the federal proceedings, the Supreme Court by implication rejected the reasoning of Meyer. Under Dennis v. Sparks, 449 U.S. 24, 29-32, 101 S.Ct. 183, 187-88, 66 L.Ed.2d 185 (1980), the immunity of a state judge under Sec. 1983 was held not to extend to private collaborators acting under color of state law. Moreover, Lugar v. Edmondson Oil, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), found that when state foreclosure procedures are utilized by a private party acting with a state agent to seize property, such a seizure may constitute state action and therefore be actionable under Sec. 1983.[10]
 
 
 48
 The district court denied Mrs. Boileau's motion to amend her complaint based upon the changes in decisional law, ruling that
 
 
 49
 the motion has been filed only after extended state court litigation and after the defendants had filed a motion for summary judgment. In my discretion, I do not feel it appropriate to permit the plaintiff to amend her complaint and to change her case at the last minute.
 
 
 50
 Mem. op. at 13.
 
 
 51
 The issue before this Court is, therefore, whether the denial of the requested amendment of the complaint on timeliness grounds was an abuse of discretion by the trial court. We note as a preliminary matter that the stated basis for the denial of the amendment, the delay in the litigation, is a purely procedural decision by the trial court. There was no examination of the merits of the proposed amendment necessary for the determination that time and tide had brought the plaintiff to the end of her litigation lifeline. Given that this ruling effectively foreclosed reaching the merits of Mrs. Boileau's claim, the district court's decision must be weighed against the concerns for fundamental justice that undergird the Federal Rules of Civil Procedure.
 
 
 52
 While leave to amend a complaint under Rule 15(a) of the Federal Rules of Civil Procedure is generally within the discretion of the trial court, "[c]ourts have shown a strong liberality ... in allowing amendments ...." 3 Moore's Federal Practice p 15.08(2), quoted in Heyl & Patterson Intern. v. F.D. Rich Housing, 663 F.2d 419, 425 (3d Cir.1981). The leading Supreme Court case on this subject, Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), reflects the general presumption in favor of allowing a party to amend pleadings. The commentaries on Rule 15 amendments support not only a liberal interpretation of this rule, but specifically address the liberal use of Rule 15 to amend complaints so as to state additional causes of action. See Wright & Miller, Federal Practice & Procedure Sec. 1474 (1975). In a matter brought before this Court, for example, a false arrest action in the Virgin Islands was amended at the close of plaintiff's evidence to add a cause of action for false imprisonment. Although decided under Rule 15(c), this Court upheld the amendments of the complaint even at that late hour. Martin v. Virgin Islands National Bank, 455 F.2d 985 (3d Cir.1972).
 
 
 53
 Foman does however allow the amendment of a complaint to be denied when one of an enumerated set of factors--including undue delay--is present; the district court in the present case held that the delay in bringing the action after the 1972 settlement was a ground for denying the motion to amend. The district court pointed to the fact that an answer to the pleadings had already been filed--specifically the defendant's motion for summary judgment in 1978. Although Rule 15(a) states that a party may amend a pleading once as a matter of course, this right ceases once the other side has delivered its responsive pleading. In Mrs. Boileau's case, however, this position obscures the fact that the summary judgment motion was filed in 1978 and was not acted upon. Instead, the case was stayed by the district court on defendants' motion, pending disposition of the state claim. Thus there was no harm in a motion to amend when the state court proceeding ended. Similarly, the delay exception in amending the complaint refers to delay in the actual proceeding in which the complaint occurs, not delay in bringing suit. Thus Foman couples the delay consideration with prejudice to the opposing party. Here, no prejudice was alleged or proved, and since the plaintiff moved to amend her complaint during the time between the filing of the state lawsuit and the 1982 lifting of the stay on the federal litigation, there is no indication of prejudice.
 
 
 54
 The liberal rules of amendment of complaints are premised on the express concern for the "just, speedy, and inexpensive determination of every action." Fed.R.Civ.Proc. 1. While it is within the discretion of a trial judge to prevent the abusive use of amendment to delay or prolong litigation, it is quite a different matter for the discretionary denial of amendment to be used to preclude a plaintiff from the federal forum altogether. Particularly where the underlying claim involves the deprivation of fundamental constitutional rights, discretionary procedural measures should be cautiously employed when denying a litigant her day in court.
 
 
 55
 We must therefore conclude that the district court erred in not permitting an amendment of the complaint.
 
 V.
 
 56
 For the foregoing reasons, the judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 In a criminal proceeding growing out of an investigation of the diversion of corporate money to create slush funds, Bethlehem Steel pleaded guilty to a nine-count information charging the company with having paid bribes to obtain ship building contracts. United States v. Bethlehem Steel, No. 80-C-431 (S.D.N.Y., July 24, 1980)
 
 
 [2]
 Because the district court granted summary judgment for defendants Bethlehem and Blank, Rome, we are required to resolve disputed facts in the light most favorable to plaintiffs
 
 
 [3]
 For a reason that was not explained, the Bucks County deputy sheriff filed a return of service showing that Mrs. Boileau was served with writs of summons in trespass and assumpsit on January 29, 1972. Not only was Mrs. Boileau not named on the writs, she also claims to have been out of the state at the time. The deputy sheriff also filed a return of service for the equity summons on January 31. Mrs. Boileau denies ever having been served any summons concerning the equity proceeding. App. at 230
 Moreover, Mrs. Boileau was dropped as a party defendant in Bethlehem Steel's amended complaint in equity filed March 16, 1972. App. at 119. She was restored to party status on May 24, 1972 in Bethlehem's amended complaint in equity. App. at 152. During the intervening period, Bethlehem proceeded with its equity suit against Mr. Boileau and the other named individuals and companies.
 
 
 [4]
 It appears that Mr. Boileau's decision not to contest this suit was premised, at least in part, upon his fear that any evidence he produced in his defense could be used against him in the criminal tax evasion case. The terms of the settlement may lend support to this hypothesis. The total amount the IRS claimed Boileau failed to report was $333,767.00, exposing him to a tax debt of $187,747.00. Presumably, the unreported amount was equal to the amount allegedly diverted from Bethlehem Steel. Yet the settlement was worth several times this amount. A plausible explanation may be found in the prison term of 20 years that Boileau faced in the criminal action
 
 
 [5]
 The court thanked the parties for "working out this very complex and difficult problem," adding "this is really saving us all a great deal of money...." App. at 188-189
 
 
 [6]
 Mrs. Boileau also sought ejectment of those parties who purchased the contested land from Bethlehem Steel
 
 
 [7]
 The court denied Bernard O'Hare's motion for summary judgment. This appeal follows from the district court's entry of judgment for Bethlehem Steel and Blank, Rome under Fed.R.Civ.Proc. 54(b)
 
 
 [8]
 Under Pennsylvania common law the plaintiff had two procedural options to attack the 1972 state court judgment by matters outside the record. She could (1) file a petition to open with the state court of original jurisdiction; or (2) collaterally attack the 1972 judgment by filing an action to restrain the judgment in another Pennsylvania state court. By filing a diversity action in federal court, Mrs. Boileau, in effect, chose the second option (i.e. to collaterally attack the 1972 judgment), but brought the action in federal court pursuant to 28 U.S.C. Sec. 1332
 
 
 [9]
 Mrs. Boileau asserts that at or about the time the case was proceeding in the state appellate courts, the defendant law firm--a defendant in the present action and counsel to defendant Bethlehem Steel in the state proceedings--contributed substantial funds to the election campaigns of state court judges, including several involved in the state court adjudication of this matter, and that at the same time the defendant law firm also represented one of the Justices of the Pennsylvania Supreme Court in various legal matters
 
 
 [10]
 Lugar addressed the question whether a private party's invocation of Virginia's prejudgment attachment procedures was actionable under the "state action" requirement of the Fourteenth Amendment and the "under color of state law" requirement of Sec. 1983. Under Lugar, "[i]f the challenged conduct ... constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under Sec. 1983." 457 U.S. at 935. Because the allegations in the proposed amended complaint concern the use of the state prothonotary signature procedure as well as joint action between Judge Rufe and the party defendants, it would appear that Mrs. Boileau has asserted a colorable claim under Lugar. The present panel of this Court entertains some differences over whether the challenged state procedures must be unconstitutional on their face or simply as applied in order to fall within the ambit of Sec. 1983 claims defined by Lugar. Moreover, it is not clear whether the amended complaint challenges the underlying constitutionality of the Pennsylvania procedure or whether Mrs. Boileau simply claims a due process violation as that procedure was applied to her. In the absence of briefs or argument on these points, this issue is best left to the determination of the district court in the first instance