

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-1998

# Fertilizer Inst v. Browner

Precedential or Non-Precedential:

Docket 97-7494

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Fertilizer Inst v. Browner" (1998). *1998 Decisions.* Paper 282.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/282

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 21, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7494

FERTILIZER INSTITUTE,
a Delaware non-profit corporation,
        Appellant

v.

CAROL M. BROWNER, Administrator,
United States Environmental Protection Agency;
THE UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 96-cv-00273)
District Judge: Hon. Joseph J. Farnan, Jr.

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 5, 1998

Before: SLOVITER and COWEN Circuit Judges and
POLLAK, District Judge*

(Filed December 21, 1998)

        Peter L. Gray
        McKenna & Cuneo, L.L.P.
        Washington, D.C. 20006

         Attorney for Appellant
_____

* Hon. Louis H. Pollak, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

Lois J. Schiffer
 Assistant Attorney General
Steve C. Gold
John T. Stahr
Mary F. Edgar
 Attorneys, Environment and
Natural Resources Division
Department of Justice
Washington, D.C. 20530

Of Counsel:
Laurel Celeste
 Attorney, Office of General Counsel
U.S. Environmental Protection
 Agency
Washington, D.C. 20460

 Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The Fertilizer Institute ("TFI") appeals the decision of the district court upholding the Environmental Protection Agency's ("EPA") addition of nitrate compounds to the Toxic Release Inventory ("Inventory"). We will affirm for the reasons discussed herein.

I.

FACTS AND PROCEDURAL HISTORY

In January 1994, the EPA proposed a rule adding 313 chemicals to the Inventory pursuant to the Emergency Planning and Community Right to Know Act of 1986 (the "EPCRA"). See 42 U.S.C. SS 11023(c)-(d). In November 1994, the EPA adopted a final rule which included 286 of the 313 chemicals originally proposed. Nitrate compounds were among the chemicals added based on chronic health effects, specifically because nitrate compounds cause human infants to develop methemoglobinemia, a condition

2

that prevents proper transportation throughout the body of oxygen via red blood cells and causes damage to vital organs. The EPA characterized this consequence to be a "severe or irreversible . . . chronic health effect," one of the criteria in the statute. See 42 U.S.C. S 11023(d)(2)(B).

In May 1996, TFI, a trade association representing the fertilizer industry whose members use nitrate compounds, filed a complaint in the district court challenging the EPA's placement of nitrate compounds on the Inventory. TFI gave three reasons for its challenge to the nitrates listing: inadequate notice of the EPA's intent to place nitrates on the list under the EPA's interpretation and application of chronic health effects; inadequate response to the comments submitted by TFI; and misapplication of the statutory criteria, which resulted in the EPA's overstepping its authority under S 11023(d). Both TFI and the EPA filed motions for summary judgment.

Reviewing the overall record, the district court held that the EPA provided adequate notice to the parties, including "particularly sophisticated commenters like TFI who are familiar with nitrate compounds." Dist. Ct. Mem. Op. at 19. The district court also concluded that the EPA adequately responded to the comments submitted by several organizations, including TFI. Id. at 22. The court observed that the criticisms challenged the EPA's conclusions, but not the evidence the agency relied on in reaching them. Id. at 21-22. Finally, the district court concluded that the EPA had shown that the record supported the decision to include nitrates because of the chronic health effects they can produce in infants. Id. at 24-25. Thus, the district court upheld the agency's addition of nitrates to the Inventory, and granted summary judgment in favor of the EPA.

TFI filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. S 1291.

3

II.

DISCUSSION

A.

Standard of Review

In considering summary judgment decisions, we review the case de novo, applying the same standard that the district court did. See Carlisle Area Sch. v. Scott P., 62 F.3d 520, 526 (3d Cir. 1995). In the context of agency decision making, we review the agency record directly. See Troy Corp. v. Browner, 120 F.3d 277, 281 (D.C. Cir. 1997).

Courts review agency decision making with deference. The Administrative Procedure Act provides that a court should "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. S 706(2)(A). Grounds for concluding that the agency acted arbitrarily and capriciously include its reliance on factors outside those Congress intended for consideration, a complete failure by the agency to consider an important aspect of the problem, or an agency's explanation contrary to, or implausible in light of, the evidence. See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Pennsylvania Dep't of Pub. Welfare v. United States Dep't of Health and Human Servs., 101 F.3d 939, 943 (3d Cir. 1996) (reversal appropriate if action "irrational, not based on relevant factors, or outside statutory authority").

We have often stated that in assessing the record, the court should not substitute its own judgment for the scientific expertise possessed by the agency. See, e.g., Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106, 117 (3d Cir. 1997). Furthermore, the courts are deferential to an agency's interpretation of a statute in situations in which "Congress has been either`silent or ambiguous' " on the question under consideration. Id. at 116 (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)).

4

B.

The EPCRA

The Emergency Planning and Community Right to Know
Act authorizes the EPA to add chemicals and compounds to
the Inventory under three general criteria, broadly
described as acute effects, chronic effects, and
environmental effects. Only the first two are relevant to the
analysis here. The relevant provision states:

> A chemical may be added if the Administrator
> determines, in his judgment, that there is sufficient
> evidence to establish any one of the following:
>
> (A) The chemical is known to cause or can
> reasonably be anticipated to cause significant
> adverse human health effects at concentration levels
> that are reasonably likely to exist beyond facility site
> boundaries as a result of continuous, or frequently
> recurring, releases.
>
> (B) The chemical is known to cause or can
> reasonably be anticipated to cause in humans --
>
>   (I) cancer or teratogenic effects, or
>
>   (ii) serious or irreversible --
>
>     (I) reproductive dysfunctions,
>
>     (II) neurological disorders,
>
>     (III) heritable genetic mutations, or
>
>     (IV) other chronic health effects.

S 11023(d)(2) (emphasis added). Subsection (A) governs
chemicals that have acute effects and imposes two
determinations on the EPA: significant adverse human
health effects and a minimum level of exposure. In
contrast, the chronic effects standard of subsection (B)
requires only a determination of "serious or irreversible . . .
chronic health effects," and does not refer to any level of
exposure.

We consider TFI's challenge to the EPA's addition of
nitrate compounds to the Inventory under the "chronic
health effects" language of subsection (B)(ii)(IV).

5

1. The Meaning and Application of "Chronic Effects"

First, TFI asserts that the EPA changed its definition and then applied the new definition of "chronic health effects" when adding nitrates to the Inventory, but without explaining the reasons for doing so. TFI compares the language in the EPA's Hazard Assessment Guidelines for Listing Chemicals on the Toxic Release Inventory, Revised Draft (26 May 1992) ("Draft HAG"), with the determination made in the final rule. The Draft HAG states that chronic health effects "result from long-term exposure to a chemical." Draft HAG at 29 (emphasis added). By contrast, the EPA's listing for nitrates is premised on the long-term (i.e., chronic) consequences of methemoglobinemia.

It is well-established that an agency may not depart from "established precedent without announcing a principled reason for such a reversal." Donovan v. Adams Steel Erection, Inc. 766 F.2d 804, 807 (3d Cir. 1985) (citing Local 777, Democratic Union Org. Comm. v. NLRB, 603 F.2d 862 (D.C. Cir. 1978)). Nor may an agency "chang[e] course by rescinding a [promulgated] rule" without providing "a reasoned analysis for the change." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 42. Either of these actions would be arbitrary and capricious.

However, we are not persuaded that the EPA has abandoned its prior practices here in the way that the precedents require to trigger an explanation. In Adams Steel, the agency departed from a series of agency-established and court-established precedential standards, and in Motor Vehicle Mfrs. Ass'n, the agency departed from an already promulgated rule, as distinguished from the unpromulgated Draft HAG, upon which TFI relies. Significantly, TFI did not challenge the evidence on which the EPA relied either in the rulemaking or in the district court. We conclude that the EPA was free to exercise its discretion and expert judgment in relying on a definition of other chronic effects that does not require long-term exposure. We agree with the D.C. Circuit's conclusion that the EPA did not abandon any long-held policy in promulgating this rule. See Troy Corp., 120 F.3d at 287.

However, TFI also contends that the EPA has used the phrase "other chronic effects" inconsistently within the final

6

rule at issue. TFI apparently argues that because the EPA now views persistence beyond the period of exposure as a characteristic of chronic effects, four chemicals that it listed under acute effects (subsection (A)) (methyltrichlorosilane, trimethyltrichlorosilane, brucine, and phosphine) should have been listed under chronic effects (subsection (B)), because they may cause permanent injury. TFI Br. at 22.

The EPA concedes that it withdrew voluntarily two of the chemicals (methyltrichlorosilane and trimethyltrichlorosilane) from the Inventory. EPA Br. at 31 (citing Deletion of Certain Chemicals, 63 Fed. Reg. 19838 (1998)). With regard to the two remaining chemicals, it considered factors such as the manifestation period and duration of the effect and concluded that these chemicals "kill too quickly for their effects to be considered `chronic.' " EPA Br. at 31. Applying this distinction involves precisely the type of scientific expertise that this court will not second guess. See Southwestern Pa. Growth Alliance, 121 F.3d at 117.

But TFI presses the inconsistency argument further, referring to related litigation over the 1994 rule. See Troy Corp., 120 F.3d 277, aff'g in part and rev'g in part National Oilseed Processors Ass'n v. Browner, 924 F. Supp. 1193 (D.D.C. 1996). In Troy Corp., the court considered, inter alia, industry objections to the EPA's listing of bronopol as a chronic toxicant. The studies on which the EPA based that listing showed that bronopol produced severe gastrointestinal irritation in tested animals, suggesting that it was an acute toxicant. The EPA relied on the duration of exposure in placing the chemical under (B), even though that subsection does not have an exposure requirement. The Troy Corp. court was concerned because previously in dealing with hydrogen sulfide the agency had looked not to the length of the exposure but to the length of the effect. The Troy Corp. court, therefore, directed the EPA to reconsider whether its listing of bronopol in the Inventory was inconsistent with its approach in the earlier case. Id. at 291.

Here, the EPA listed nitrates based on the chronic effect, not the duration of the exposure, which is consistent with its approach to hydrogen sulfide. Had it based this listing

7

on duration of exposure, TFI would have been able to argue that the EPA was being inconsistent with the hydrogen sulfide listing. Therefore, the EPA was not arbitrary and capricious in its listing of nitrates under subsection (B).

2. Statutory Construction

TFI next contends that in listing nitrates the EPA interpreted the statutory language of "serious or irreversible," 42 U.S.C. S 11023(d)(2)(B)(ii)(IV), in a way that makes the term "chronic" superfluous, which would be an impermissible statutory construction. See Babbitt v. Sweet Home Chapter of Communities for Greater Or., 515 U.S. 687, 698 (1995); United Steel Workers v. North Star Steel Co., 5 F.3d 39, 42 (3d Cir. 1993). Specifically, it argues that "the fact that an adverse effect may persist past the period of exposure is simply another way of stating that the effect is `serious or irreversible.' " TFI Br. at 25.

As the EPA notes, not all chronic effects are irreversible, and to demonstrate that the word "chronic" retains meaning distinct from "irreversible" it gives the example of a stomach ulcer that might develop over a long period of time and last a long time but be medically reversible. Similarly, not all "chronic effects" are necessarily serious, because, as the EPA notes, a minor effect might last a long time.

The mere existence of some overlap between terms does not mean that the EPA's interpretation of the statutory language is so unreasonable that it cannot be accepted. See Sweet Home Chapter, 515 U.S. at 698 (agency interpretation creating overlap with other words in statute a function of act's purposes not agency unreasonableness). The deference that we owe to an agency's interpretation of its own statute, particularly one this technical, requires at least that much.

3. Notice of the Definition of "Chronic Effects"

Finally, TFI contends that during the rulemaking process the EPA failed to notify the public that the basis for its listing of nitrate compounds as "chronic" was that they produce health effects that persist past the period of exposure. It argues that had it known that the EPA was

8

applying what TFI asserts is the "new `chronic effects' definition," TFI would have commented.

In responding, the EPA first notes that TFI did not raise this issue in the district court. Instead, there it raised lack of notice that effects other than methemoglobinemia were the basis for listing nitrates. TFI has not disputed in its reply brief that the direction of its lack of notice argument in the district court was different than that it makes here. This alone would support ruling against TFI. In any event, the record supports the conclusion that TFI was adequately apprised of the definition that the EPA used.

The rulemaking process requires an agency "to fairly apprise interested parties of all significant subjects and issues involved," American Iron & Steel Inst. v. EPA, 568 F.2d 284, 291 (3d Cir. 1977) (internal quotation marks omitted), so that they can participate in the process. This policy is not undermined when an agency promulgates a final rule that does not mirror precisely the proposed rule outlined in the notice. A "substantially different" rule is permissible as long as the participants had sufficient notice at the start of the process. Id. at 293; accord Association of Oil Pipelines v. FERC, 83 F.3d 1424, 1432 (D.C. Cir. 1996).

The EPA argues that the notice sufficiently apprised interested parties of its persistent effects rationale for listing nitrates under the chronic effects category, and that it merely applied what was a commonly used interpretation of "chronic effects." In its notice, it referred interested commenters to the scientific literature on which its conclusions were based. The EPA notes that at least one commenter understood that EPA would consider an effect chronic based on the effect's duration, and that commentator directed comments to that issue. Just as TFI could understand that it was not the methemoglobinemia condition itself, but the extended consequences of that condition, that warranted a listing under chronic effects, it could conclude that the EPA was relying on the persistent consequences after exposure.

TFI was apprised sufficiently of the EPA's usage of persistence beyond exposure as the basis for the nitrates listing. Therefore, this final challenge fails.

9

III.

CONCLUSION

We have considered all of TFI's other contentions as well
and conclude that it has failed to demonstrate that the EPA
acted arbitrarily and capriciously in listing nitrates on the
Toxic Release Inventory because of their "serious or
irreversible . . . chronic health effects." Thus, we will affirm
the district court's grant of summary judgment for the EPA.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

10