

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-28-2006

# Yurecka v. Zappala

Precedential or Non-Precedential: Precedential

Docket No. 05-2468

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Yurecka v. Zappala" (2006). *2006 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2468

MARIE M. YURECKA, Individually and as Administratrix
of the Estate of William J. Yurecka, Deceased, and as Natural
Guardian of M.M. Yurecka and K.W. Yurecka, Minors;
BRIAN R. YURECKA,
Appellants

v.

JEFFREY ZAPPALA; ARLENE PICCIONI-ZAPPALA,
Defendants-/Third-Party Plaintiffs

v.

RONALD M. ROCKWELL; PENNSYLVANIA
TURNPIKE COMMISSION; RONALD C. ROCKWELL,
Third-Party Defendants

On Appeal from the United States District
Court for the Middle District of Pennsylvania
(District Court No. 04-cv-01352)
District Judge: Honorable Edwin M. Kosik

Argued: September 27, 2006

Before: MCKEE and AMBRO, <u>Circuit</u> <u>Judges</u>, and
RESTANI,[*] <u>Judge</u>.

*Honorable Jane A. Restani, Chief Judge of the United States
Court of International Trade, sitting by designation.

Paul T. Sheppard, Esquire (Argued)
Hinman, Howard & Kattell, LLP
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902

      Counsel for Appellants

Louis E. Bricklin, Esquire (Argued)
Lawrence R. Berger, III, Esquire
Bennett, Bricklin & Saltzburg, LLP
1601 Market Street, 16th Floor
Philadelphia, PA 19103

      Counsel for Appellees

_____

## OPINION OF THE COURT
_____

RESTANI, <u>Judge</u>.

Plaintiffs-Appellants Marie Yurecka, individually and as administratrix of the Estate of William Yurecka, and as natural guardian of M.M. Yurecka and K.W. Yurecka, and Brian Yurecka appeal from a judgment of the United States District Court for the Middle District of Pennsylvania. The District Court granted a motion for summary judgment in favor of Defendants-Appellees Jeffrey Zappala and Arlene Piccioni-Zappala on the ground that the rescue doctrine does not support the Yureckas' claims arising from two automobile accidents on the Pennsylvania Turnpike, the second of which caused the death of William Yurecka. For the reasons that follow, we conclude that a genuine issue of material fact exists as to whether the rescue was ongoing at the time of the second accident, and reverse and remand for further proceedings.

## **BACKGROUND**

This action arises from two automobile accidents that occurred on the Pennsylvania Turnpike on the evening of May 12, 2002. The following facts are undisputed.

While driving north on the Turnpike in heavy rainfall, William Yurecka, his wife Marie Yurecka, and their three children saw a white Toyota 4-Runner pass their vehicle and travel out of sight. The Toyota 4-Runner was driven by Jeffrey Zappala, and seated in the front passenger seat was his wife, Arlene Piccioni-Zappala. The Yureckas later noticed the Toyota 4-Runner lying overturned off of the right side of the highway. They decided to stop to provide assistance, as both Mr. and Mrs. Yurecka were trained and certified in first aid by the Red Cross. The Yureckas pulled to the side of the highway, parked their minivan with the "hazard lights" flashing, exited the vehicle and walked downhill toward the 4-Runner.

As the Yureckas approached the Zappalas' vehicle, which was visibly totaled as a result of the accident, the Zappalas managed to climb out through the rear of their vehicle.[1] Although the Zappalas said that they were "all right" and appeared externally uninjured, they followed the Yureckas to their minivan, where the Yureckas made room for them to sit under the minivan's rear hatch to provide shelter from the heavy rain. Mr. Yurecka walked to a nearby emergency call box to phone the police and then returned to the minivan to assist the Zappalas. The Yureckas' three children remained inside the passenger compartment.

While the Zappalas sat beneath the rear hatch of the Yureckas' minivan, the Yureckas verbally comforted them, provided them with warm blankets and a pair of shoes for Mrs. Zappala, who had lost hers in the accident, and stayed with them to monitor for possible shock and other injuries while the

---

[1]It is not clear in the record whether another vehicle arrived on the scene prior to the Yureckas' arrival, or whether the occupants of that vehicle assisted the Zappalas in leaving the overturned 4-Runner. Following the Zappalas' exit from their vehicle, however, it is undisputed that the Yureckas were the sole providers of assistance.

Zappalas waited for police to arrive.

Approximately seventeen minutes later, while the Zappalas waited inside the Yureckas' minivan, a third vehicle, driven by Third-Party Defendant Robert Rockwell, lost control on the wet highway. His vehicle swerved and hydroplaned into the Yureckas' parked vehicle. Mr. Yurecka, who had been standing near the rear corner of the minivan, was hit by the Rockwell vehicle and dragged north into the left lane of the Turnpike. The police arrived after Mr. Yurecka was hit, and he was transported to the hospital, where he died as a result of multiple traumatic injuries from the collision.

In May 2004, the Yureckas brought an action for wrongful death, survival claims, and negligent infliction of emotional distress against the Zappalas in the Luzerne County, Pennsylvania, Court of Common Pleas. The case was then removed to the Middle District of Pennsylvania on the basis of diversity jurisdiction. The Yureckas' claims were based on the Zappalas' negligence in causing the first accident, which prompted the Yureckas to come to their rescue, placing Mr. Yurecka in the way of harm that ultimately led to his death. The Zappalas argued that any rescue was completed at the time of the subsequent accident, and that the rescue doctrine no longer applied.

The District Court agreed, granting a motion for summary judgment on the grounds that the rescue doctrine did not apply at the time of the second accident.[2] The Court also found, however, that the Zappalas were driving at an unsafe speed at the time of their accident, and that the Yureckas had been rescuers at the time they stopped to provide assistance. Yurecka v. Zappala, No. 04-CV-1352, slip op. at 3, 12 (M.D. Pa. Apr. 20, 2005). On April 20, 2005, the District Court

---

[2]The District Court held that legal approaches to the rescue doctrine "after the threat of imminent peril has ceased" may be separated into distinct "narrow" and "broad" categories, and that the peril in this case had ended at the time of Mr. Yurecka's fatal injury. J.A. at A-12.

4

granted the motion for summary judgment on all counts of the complaint in favor of the Zappalas. The Yureckas appeal.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final decision of the District Court pursuant to 28 U.S.C. § 1291. A district court's grant of summary judgment is reviewed de novo. Fertilizer Inst. v. Browner, 163 F.3d 774, 777 (3d Cir. 1998). In reviewing a grant of summary judgment, we apply the same standard as the District Court to determine whether there exists a genuine issue of material fact. Id.; see also Fed. R. Civ. P. 56(c). All facts must be viewed "'in the light most favorable to the party opposing the motion,'" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)), and the burden is on the party moving for summary judgment to demonstrate the absence of any material issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A federal court sitting in diversity is required to apply the substantive law of the state whose laws govern the action. Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990). In the absence of any clear precedent of the state's highest court, we must predict how that court would resolve the issue. Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 528 n.3 (3d Cir. 1997). In making such a prediction, we should consider "'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand.'" Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (quoting McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980).

## DISCUSSION

Although the Pennsylvania Supreme Court has not clearly defined the scope of Pennsylvania's rescue doctrine, other existing case law indicates that a rescuer plaintiff may recover for injuries suffered in the course of a rescue if it can be shown that: 1) the defendant negligently caused the dangerous

5

situation; 2) the person requiring rescue was in imminent peril or the rescuer reasonably believed that such peril existed; and 3) the rescuer's actions during the rescue were not reckless. See Pachesky v. Getz, 510 A.2d 776, 780–83 (Pa. Super. Ct. 1986). Altamuro v. Milner Hotel, Inc., states that "[i]n applying the rescue doctrine, [the court] must first determine the negligence vel non of the [defendant]." 540 F. Supp. 870, 875 (E.D. Pa. 1982). The Pennsylvania Superior Court has also recognized that "the situation precipitating the 'rescue' must warrant a reasonable belief that the peril facing the object of the rescue was urgent and imminent." Bell v. Irace, 619 A.2d 365, 369 (Pa. Super. Ct. 1993). This approach reflects the broadly accepted rescue doctrine principle that "a plaintiff remains in the course of a rescue attempt where the plaintiff acts under a reasonable belief that the endangered party's peril continues." Sweetman v. State Highway Dept., 357 N.W.2d 783, 790 (Mich. App. 1984); see also Wagner v. Intl Ry. Co., 133 N.E. 437, 438 (N.Y. 1921); Estate of Keck By and Through Cabe v. Blair, 856 P.2d 740, 746 (Wash. App. 1993). Finally, Pachesky states that rescuer plaintiffs may recover for injuries suffered in the course of a rescue if they acted "'in the exercise of ordinary care for their own safety under the circumstances, short of rashness and recklessness.'" Pachesky, 510 A.2d at 781 (quoting Walker Hauling Co. v. Johnson, 139 S.E.2d 496, 499 (Ga. Ct. App. 1964)).[3]

---

[3]For the purposes of apportioning damages under a comparative fault standard, the Pachesky court further distinguishes between rescuers who acted negligently but not recklessly and those who acted non-negligently:

> When a plaintiff performs a rescue in a reasonable manner, he/she is entitled to full recovery from the negligent defendant for all damages occasioned thereby. However, when a plaintiff acts unreasonably, that is, in a negligent fashion, in performing a rescue, the relative causal negligence of the parties should be apportioned in accordance with [the law].

(continued...)

6

The Zappalas do not dispute for summary judgment purposes that Mr. Zappala was negligent in causing the first accident, and have not alleged that the Yureckas acted recklessly in carrying out the rescue. Rather, the Zappalas contend that there was no imminent peril at the time of the second accident, and that the Yureckas had no reasonable belief that such peril existed. Therefore, the decisive issue in this case is the second element of the rescue doctrine test: whether there existed either continued peril or a reasonable belief of such peril in the minds of the rescuers at the time of Mr. Yurecka's fatal injury.

Under the rescue doctrine, peril is defined as risk of "suffering serious injury or death." Bell, 619 A.2d at 369. The peril must be "imminent and real, and not merely imaginary or speculative." Holle v. Lake, 398 P.2d 300, 304 (Kan. 1965). Reasonable belief of such peril requires "more than a suspicion of danger," but does not require actual injury or unmistakable knowledge on the part of the rescuer. Gifford v. Haller, 273 A.2d 751, 753 (N.Y. App. Div. 2000). A reasonable belief cannot "exist in a case where the negligent act causing the victim's injuries has run its course . . . unless the knowledge of the rescuer gave him reason to believe that the peril to the victim's life was continuing." Marks v. Wagner, 370 N.E.2d 480, 484 (Ohio App. 1977). The determination of reasonableness is generally a "question for the trier of fact." Gifford, 273 A.2d at 753. Because the parties to this case focus on the reasonable belief of the rescuers, the discussion here will also take that focus, although the possibility of actual ongoing peril has not been ruled out.

In support of their claims, the Yureckas argue that they

[3](...continued) Pachesky, 510 A.2d at 783.

In this case, however, the third element of the rescue doctrine test is not contested, and there has been no claim of either negligence or recklessness on the part of the Yureckas.

7

reasonably believed that the Zappalas were in imminent danger and required immediate and ongoing assistance following the initial accident. The Yureckas point to evidence on the record to indicate a genuine factual issue as to the reasonableness of that belief. If such an issue exists, the Zappalas' motion for summary judgment must be denied. Fed. R. Civ. P. 56(c).

In order to determine whether a genuine issue exists under the second factor of the rescue doctrine test, we must consider all circumstances surrounding the initial and subsequent collisions, as well as factors that could have affected the parties' states of mind during the rescue. See Bell, 619 A.2d at 370 (court looks to "the facts alleged . . . together with the reasonable inferences deducible from those facts" to determine reasonableness of belief); see also Truitt v. Hays, 33 Pa. D. & C.2d 453, 463 (Ct. Com. Pl. Pa. 1963) (court states that "[a] rescuer is not to be charged with errors of judgment that result from the excitement and confusion of the moment"). To demonstrate the reasonableness of their belief of imminent peril, the Yureckas point to evidence of the dangerous weather and other conditions of the accident scene during the time that they provided assistance, the proximity to a busy highway that had already proved perilous, the possibility of shock and other latent injuries, and the influence of Red Cross training principles on their states of mind.

First, the conditions of the accident scene provide evidence that the Yureckas could reasonably have believed that the Zappalas faced imminent and ongoing peril. In the aftermath of the accident, the Zappalas' vehicle laid overturned and visibly impaired beside the Turnpike, leaving only a rear hatch through which to escape. The Zappalas were stranded on the side of the Turnpike, drenched from the rain, shaken up by their accident, and Mrs. Zappala was left barefoot by the accident. The Zappalas were in close proximity to a busy highway that was wet and slick from the continuing heavy rain. Both the Yureckas and the Zappalas had firsthand knowledge of the peril that could be presented by a roadway under such conditions, as the parties stood between a rain-soaked, high-speed and heavily-traveled highway and the visible aftermath of a serious accident that had occurred just moments before.

8

The Yureckas protected the Zappalas from these hazards by providing shelter from the rain and risks of the roadway, remaining on hand to monitor for injuries and provide first aid if it became necessary, and supplying blankets to reduce the risk of shock. Mrs. Yurecka indicated in her deposition that she and her husband were aware that the Zappalas were at risk for shock and other latent injuries associated with accidents of this severity. See M. Yurecka Dep. 31:2–14, Jan. 5, 2005. The deposition also provides evidence that the Yureckas knew that such injuries could be exacerbated by exposure to rain and cold. See id. at 31:12–14. There was no way for the Yureckas to determine the extent of the Zappalas' injuries until medical help arrived on the scene, and the Yureckas' Red Cross training had taught them the importance of remaining with the victims to monitor for possible injuries until professional help arrived. The fact that the Yureckas had some specialized knowledge of such principles of first aid provides additional evidence to support the reasonableness of their belief that the peril was ongoing. See Marks, 370 N.E.2d at 484. ("[T]he knowledge of the rescuer [may give him or her] reason to believe that the peril to the victim's life is continuing.").

The Yureckas have presented considerable evidence of the circumstances surrounding their assistance to the Zappalas, as well as of their belief in the continuing need for such assistance. The conditions of the accident scene provided numerous reasons to believe that the situation presented serious and ongoing risks to life and limb of all who were present. In providing assistance, the Yureckas sought to reduce these risks to the Zappalas. From the evidence on the record, a jury could reasonably infer that the Yureckas believed that there existed ongoing and imminent peril and that the Zappalas were in need of continued post-accident emergency assistance through the time of the subsequent fatal accident. Therefore, this case presents a genuine issue on the second element of the rescue doctrine test and should proceed for a factual finding on the reasonableness of the Yureckas' belief that a condition of imminent and ongoing peril existed.

This outcome is not inconsistent with existing Pennsylvania case law. In granting summary judgment, the

9

District Court erroneously relied on the Pennsylvania Superior Court's opinion in Bell v. Irace, 619 A.2d 365. The District Court mistook factual distinctions in the case law as evidence of a divergence in legal approaches to the rescue doctrine.[4] In construing Bell, the District Court also presupposed the outcome of the factual issue in this case by asking whether the law of Pennsylvania recognizes a rescuer's right to recover for injuries after a rescue has definitively ended, rather than the correct question of whether the Yureckas' rescue was ongoing under the second element of the rescue doctrine test.

The facts of Bell underpin the Pennsylvania court's ruling in that case, and distinguish it from the facts of our case. In Bell, the plaintiff was an emergency medical technician who was called in her capacity as a medical professional to the scene of a collision between a motorist and a pedestrian. Bell, 619 A.2d at 367. Bell arrived only after other medical help had arrived, and she was injured by the accident victim's involuntary spasms during the course of treatment. Id. Bell sought recovery on the grounds that she was acting as a rescuer at the time of her injury, and that she was therefore entitled to relief under the rescue doctrine. Id. The court in Bell held that the plaintiff's injuries were beyond the scope of the rescue doctrine because the reasonable belief of continuing peril requirement was not fulfilled.[5] Id. at 370. The court explained that "the situation

_____

[4]Because we conclude that the proper question here under Pennsylvania law is whether the plaintiffs have a reasonable belief that a condition of imminent and ongoing peril exists, we find it unnecessary to adopt the District Court's approach. We note, however, that the District Court's "narrow" versus "broad" categorization depended heavily on Bell, which will be distinguished below, and on cases from jurisdictions outside of Pennsylvania that may be distinguishable on their facts rather than on any clear divergence in legal approaches to the rescue doctrine.

[5]That court did not address whether the "Firefighter's Rule" also prevented Bell's recovery under the rescue doctrine. Bell, 619 A.2d at 370 ("Because we conclude that the rescue

(continued...)

10

precipitating the 'rescue' must warrant a reasonable belief that the peril facing the object of the rescue was urgent and imminent," and that "Bell was not injured while attempting a heroic rescue of the nature contemplated by the rescue doctrine." Id. at 369–70.

Unlike our case, Bell did not present a factual question of whether the rescue had ended at some point between Bell's arrival and her injury. The Bell court concluded that Bell could not reasonably have believed that the need for rescue was ongoing because she was called to the scene in her capacity as a medical professional, arrived after other emergency professionals were on the scene, and provided assistance only after the accident scene clearly had been stabilized. The question in this case is not whether the Yureckas were acting as rescuers at all, as in Bell. It is undisputed that the Yureckas were acting as rescuers within the rescue doctrine at the time that they approached the accident scene. Instead, our case presents a genuine issue as to whether the rescue was ongoing at the time of Mr. Yurecka's injury. This basis for reversing the District Court's grant of summary judgment is in line with Bell's holding that the rescue doctrine provides relief only where the peril is ongoing or the rescuer reasonably believes that such peril exists. See id. at 369. The current holding is also consistent with other cases interpreting Pennsylvania law. In Pachesky, the Pennsylvania Superior Court denied recovery to a rescuer on the ground that she had acted unreasonably in performing the rescue, and was therefore subject to a jury's apportionment under the state's comparative negligence statute. Pachesky, 510 A.2d at 783. In reaching this conclusion, however, the Pachesky court reinforced "rescuers' favored status in the eyes of the law," id. at 783 n. 8, and used the

[5](...continued) doctrine does not apply in this case, it is not necessary for us to decide the question raised by Appellants whether the rescue doctrine is available to 'involuntary,' or professional, rescuers." ). The Firefighter's Rule is a narrow exception to the rescue doctrine, stating that the rescue doctrine does not apply to professional rescuers injured in the line of duty. See 57B Am. Jur. 2d Negligence § 783.

11

second part of the rescue doctrine test to determine that the rescue was ongoing. See id. at 781 (citing Walker, 139 S.E.2d at 499). Unlike the case before us, Pachesky addressed the rescuer's comparative negligence in performing the rescue, necessarily assuming that the rescue was ongoing at the time.

Similarly, Altamuro granted rescuer status on the ground that the rescuer had not acted unreasonably in reentering a burning hotel to assist guests in peril. Altamuro, 540 F. Supp. at 877. The court assumed without discussion that the rescue was ongoing due to the nature of the facts, and questioned only whether the hotel had been negligent in causing the fire, and whether the rescuer acted "so unreasonabl[y] as to preclude recovery." Id. at 876. This approach follows that of the Pennsylvania Supreme Court in Corbin v. City of Philadelphia, an early rescue doctrine case that found rescuer status so long as the rescuer acted without "rashness [or] imprudence" in carrying out the rescue. Corbin v. City of Phila., 45 A. 1070, 1073 (Pa. 1900). Like Pachesky, the question in each of these cases was not whether the rescue was ongoing, as in our case, but whether the rescuer acted recklessly in performing the rescue.

This case presents a genuine issue as to whether the rescuers reasonably believed that the peril was imminent and ongoing under the second element of the rescue doctrine test. As mentioned previously, the determination of a rescuer's belief of continued peril is generally a question for a trier of fact. Consistent with prior approaches to the rescue doctrine under Pennsylvania law, this case presents a triable issue sufficient to overcome summary judgment.

Therefore, we reverse the District Court's grant of summary judgment in favor of the Zappalas and remand for further proceedings on the factual issue of whether there was continuing imminent danger or a reasonable belief of continued peril in the minds of the Yureckas.

12