**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4344
_____

VICTOR WHEELER; SANDRA J. WHEELER; JAMES K. SISSON; NANCY A.
SISSON; BRUCE D. REDFIELD, III; TAMERA J. REDFIELD; VINCENT J.
BARTOSEK; PATTY BARTOSEK; DAVID WARNER; TINA M. WARNER

v.

MATERIAL RECOVERY OF ERIE INC.; RICHARD A. SOMMERS; NORTHWEST
PENNSYLVANIA TRAILS ASSOCIATION; KATHY SCHRECKENGOST;
PENNSYLVANIA ELECTRIC COMPANY; FIRSTENERGY CORP.; CANADIAN
NATIONAL RAILWAY COMPANY; SURFACE TRANSPORTATION BOARD

Victor Wheeler; Sandra J. Wheeler;
James K. Sisson; Nancy A. Sisson, Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 06-cv-00085)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 27, 2010

Before: RENDELL, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed: October 1, 2010 )
_____

OPINION
_____

1

PER CURIAM

Appellants, landowners from Erie County, Pennsylvania, appeal from an order of the District Court denying Appellants' petition for review of a decision of the Surface Transportation Board ("STB" or the "Board"),[1] in which the Board, upon referral, denied Appellants' request that the STB reopen its earlier determination that a 5.73-mile rail right-of-way had been properly "railbanked" for interim trail use in 1990 under the National Trails System Act (the "Trails Act").[2] The STB's decision also denied Appellants' request for oral argument and discovery, and granted the joint motion of Appellees Material Recovery and Northwest Pennsylvania Trails Association to reopen the matter for the limited purposes of allowing the substitution of one trail sponsor for another. For the following reasons, we will affirm.

I.

Appellants are the owners of parcels of land adjacent to a 5.73-mile strip of land (the "Trail") that, prior to 1973, served a railway line owned and operated by Penn

---

[1] The STB is the agency charged under the Interstate Commerce Act, 49 U.S.C. § 10101, et seq., with regulating rail carriers that provide transportation over any part of the interstate rail network. See 49 U.S.C. § 10501.

[2] The Trails Act was enacted in 1968 to establish a nationwide system of nature trails. In 1983, Congress added a rail section, codified at 16 U.S.C. § 1247(d), to serve the dual purpose of preserving unused railroad rights-of-way for possible future rail use and promoting nature trails. See Preseault v. I.C.C, 494 U.S. 1, 5-7 (1990). "Railbanking" is the "preserv[ation] of unused railway rights-of-way for future use" under the terms of the statute. Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1369 (Fed. Cir. 2009).

2

Central Railroad.[3] Appellants also hold a reversionary interest in the Trail. In 1973, the Interstate Commerce Commission ("ICC"), the STB's predecessor agency, issued a decision authorizing Penn Central to abandon operations on the railroad line. The ICC's order to cease operations was subsequently stayed by Penn Central's bankruptcy. In 1974, Congress passed the Regional Rail Reorganization Act of 1973, Pub. L. No. 93-236, 87 Stat. 985 (1974) (the "3R Act"), whose purpose was to reorganize the bankrupt Penn Central (and other failing carriers) and establish procedures for disposing of rail lines operated by those carriers. Pursuant to these procedures, the right-of-way over the portion of the rail that included the Trail was transferred to the Bessemer & Lake Erie Railroad Company ("B&LE"), a subsidiary of Canadian National Railway. From 1976 to 1989, the Trail remained unused.

In August, 1989, B&LE entered into a contingent agreement with Material Recovery of Erie, Inc. ("MR") to convey its interest in the Trail to MR as part of the process of railbanking the Trail under the Railbanking Act.[4] Upon application to the STB, the Board granted MR a Notice of Interim Trail Use ("NITU") pursuant to 49 C.F.R. § 1152.29(a). See Docket No. AB-88 (Sub-No. 5X), Jan. 8, 1990 Decision (the

[3] Penn Central did not hold title to the land in fee simple, leasing it instead from the Erie & Pittsburgh Railroad Company.

[4] The Railbanking Act is triggered when a railroad desires to terminate its common carrier obligation to provide freight rail service on a line, an action requiring approval from the STB. 49 U.S.C. § 10903. When a qualified entity desires to negotiate with a railroad concerning the preservation of a corridor for future rail and interim trail use, it must request that the STB issue a railbanking order known as a certificate, or notice, of interim trail use. See 49 C.F.R. § 1152.29(a).

"1990 NITU"). No party sought judicial review of the 1990 NITU.

In 1997, MR filed for bankruptcy. As part of the bankruptcy proceeding, MR sought to convey its interest in the Trail to Pennsylvania Electric Company ("Penelec"). The Appellants, as adjacent property owners, intervened in the bankruptcy proceeding and objected to the proposed sale, arguing that their reversionary interests in the Trail's right-of-way had vested. The bankruptcy court referred the issue to the STB. Pursuant to that referral, MR filed a petition to reopen and clarify the 1990 NITU. The STB reopened the 1990 NITU and issued a decision concluding that the right-of-way had been properly transferred and that the Trail had been properly railbanked. See Docket No. AB-88 (Sub-No. 5X), May 21, 1997 Decision (the "1997 STB Order"). The STB issued its decision as "advisory," however, because the bankruptcy court retained jurisdiction over the Trail and any final determination of legal ownership. The STB further indicated that, should the bankruptcy court approve a sale of the right-of-way to Penelec, Penelec would be required to comply with the procedures at 49 C.F.R. § 1152.29(f) to ensure that the right-of-way would continue to be railbanked pursuant to the Trails Act.

The bankruptcy court ultimately permitted MR to grant a utility easement over the Trail right-of-way to Penelec (as opposed to an outright sale), but made no determination of the adjoining property owners' rights. See In re Material Recovery of Erie, Inc., Bankruptcy No. 94-10812, November 30, 1999 Decision. Appellants did not appeal.

In 2005, MR entered into an agreement with the Northwest Pennsylvania Trail Association ("NWPTA") for NWPTA to purchase property from MR unrelated to the

4

Trail. In addition, the parties entered into a separate "Donation Agreement" that contemplated the future donation of the Trail to NWPTA. See Donation Agreement, Appellee's Supplemental App. 216-219. In April, 2006, Appellants filed an action in the United States District Court for the Western District of Pennsylvania to enforce the 1997 STB Order under 28 U.S.C. § 1336(a).[5] The complaint alleged that MR and the NWPTA had violated the 1997 STB Order by failing to comply with the provisions of 49 C.F.R. § 1152.29(f), resulting in an abandonment of the property and the triggering of Appellants' reversionary interests in the right-of-way. Pursuant to the doctrine of primary jurisdiction, the District Court referred the matter to the STB in March 2007. See 28 U.S.C. § 1336(b); Union Pacific R. Co. v. Ametek, Inc., 104 F.3d 558, 561 (3d Cir. 1997) (explaining that a district court may refer issues to the STB for determination when the question falls within the STB's primary jurisdiction). Appellants then filed a petition before the STB seeking a declaratory judgment concerning their legal rights to the Trail. See Petition of Victor Wheeler, et al., for Declaratory Order (STB Finance Docket No. 35082), filed September 14, 2007 (the "Petition for Declaratory Order").

MR and NWPTA subsequently filed a separate action asking the STB to reopen the 1990 NITU docket, vacate the existing NITU, and substitute NWPTA as the trail sponsor pursuant to the transfer provisions of 49 C.F.R § 1152.29(f). See Joint Motion of NWPTA and MR for Substitution of New Interim Trail User (Docket No. AB-88 (Sub-

---

[5] 28 U.S.C. § 1336 provides that the district courts shall have jurisdiction in any civil action to "enforce, in whole or in part, any order of the Surface Transportation Board." 28 U.S.C. § 1336(a).

5

No. 5X)), October 9, 2007 (the "Motion for Substitution").  Appellants opposed the motion and requested discovery, oral argument, and concurrent and expedited consideration of both matters.

The STB granted Appellants' motion to have the two cases considered concurrently and in August 2008, issued a single decision with respect to the issues raised by both the Petition for Declaratory Order and Motion for Substitution.  See STB Finance Docket No. 35082, August 27, 2008 Decision ("2008 STB Order").  The STB rejected Appellants' request for discovery, noting that discovery is not typically conducted in declaratory order proceedings, that Appellants had ample opportunity to pursue discovery in the District Court, and that Appellants had not indicated what additional materials they wished to obtain.  Regarding Appellants' request for oral argument, the STB noted that under 49 C.F.R. § 1114.6, it could take judicial notice of the records in prior Board proceedings pertaining to the Trail, and therefore had "sufficient information with which to resolve the issues" referred to it by the District Court.  The Board also noted that Appellants "had not demonstrated that there are any material matters in dispute that cannot be adequately considered and resolved based on written submissions."  2008 STB Order at 6.

Turning to the merits, the STB determined that Appellants' claim that the Trail had been abandoned prior to being railbanked in 1990 was essentially a challenge to the Board's 1997 decision with respect to the railbanked status of the right-of-way. Therefore, the STB treated Appellants' motion as a petition to reopen the 1997 STB

Order and applied the standard governing motions to reopen, which requires a showing of new evidence, changed circumstances, or material error. See 49 U.S.C. § 772(c); 49 C.F.R. § 1115.4. The STB found that Appellants offered no new evidence or changed circumstances in support of their claim, but considered whether they had demonstrated material error. The STB considered Appellant's arguments and concluded that there was no material error to justify reopening the 1997 STB Order.

The STB treated the remainder of Appellants' pleading as a petition for a declaratory order declaring that MR had violated the 1997 STB Order by failing to create a trail after it had been authorized to acquire the right-of-way for interim trail use. The STB declined to find a violation on these grounds because the Trails Act specifies no time limit in which a trail must be developed or its intended level of use. The STB also rejected Appellants' argument that MR had violated the order by failing to meet its financial and legal obligations with respect to the Trail. Accordingly, the STB denied Appellants' petition for a declaratory order.

In the same opinion, the STB approved the separately filed joint motion of MR and NWPTA to substitute the latter as the new trail sponsor. In order to effect the substitution, the STB was required by statute to reopen the proceedings in Docket No. AB-88 (Sub-No. 5X) for the limited purpose of replacing the NITU served on January 8, 1990, with a replacement NITU substituting NWPTA as interim trail sponsor. See 49 C.F.R. § 1152.29(f)(2).

Following the Board's decision, Appellants filed a timely petition for review in the

7

District Court pursuant to 28 U.S.C. § 1336(b), which provides that a district court has jurisdiction to review an action to "enforce, enjoin, set aside, annul, or suspend" any order of the Board "arising out of" the court's referral. The District Court denied the petition on September 10, 2009. The District Court's order also granted the motions to dismiss filed by Appellees NWPTA, Kathy Schreckengost, Penelec, MR and Richard Sommers. Appellant Wheeler, proceeding pro se, timely filed a notice of appeal.[6]

II

We have jurisdiction under 28 U.S.C. § 1291. When reviewing a district court's affirmance of an agency decision, we review the district court's decision *de novo*, while applying the "appropriate standard of review to the agency's decision." See Concerned Citizens Alliance, Inc., v. Slater, 176 F.3d 686, 693 (3d Cir. 1999) (quotations and citations omitted); see also Fertilizer Inst. v. Browner, 163 F.3d 774, 777 (3d Cir. 1998). Under this deferential standard we may set aside an agency decision only if it is "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. (citing 5 U.S.C. § 706(2)(A)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Fertilizer, 163 F.3d at 777. We must only determine

---

[6] The notice of appeal filed by Sandra Wheeler, James Sisson, and Nancy Sisson, was not timely filed within the 60-day time limit set forth in Fed. R. Civ. P. § 4(a)(1)(B) and 28 U.S.C. § 2107(b). We therefore lack jurisdiction over those appeals, with the exception of the appeal of Victor Wheeler's spouse, Sandra Wheeler, over which we have jurisdiction pursuant to Fed. R. App. P. 3(c)(2).

"whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs., 463 U.S. at 43 (quotations and citations omitted). An agency decision is not arbitrary or capricious where it has articulated a "rational connection between the facts found and the choice made." Id. at 52. Furthermore, courts must be deferential to an agency's interpretation of a statute in situations in which "Congress has been either 'silent or ambiguous'" on the question under consideration. Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106, 116 (3d Cir. 1997) (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)).

## III.

Appellants argue that the District Court erred in holding that the STB's decision not to reopen its earlier determinations that the Trail had been properly railbanked was non-reviewable under the Supreme Court's holding in I.C.C. v. Brotherhood of Locomotive Engineers, 482 U.S. 270, 284 (1987) ("BLE"). BLE held that a court may not review the ICC's refusal to reopen proceedings unless the motion to reopen was based on new evidence of changed circumstances.[7] Id. Because Appellants' motion to reopen was based on the ground of material error, the District Court found that it was not reviewable. Id. at 279. Appellants argued that, under this Court's holding in Friends of the Atglen-Susquehanna Trail, Inc., v. S.T.B., when the STB reopened the 1990 NITU for the limited purpose of substituting NWPTA as trail sponsor, it made the reopening order

_____

[7] The STB is the successor agency to the ICC.

9

reviewable "for all purposes." 252 F.3d 246, 260 (3d Cir. 2001) (concluding that when the STB explicitly reopens a case, even for a limited purpose, it makes every aspect of the reopening order subject to review); see also BLE, 482 U.S. at 278 (holding that when the agency "reopens a proceeding for any reason and, after reconsideration, issues a new and final order setting forth the rights and obligations of the parties, that order – even if it merely reaffirms the rights and obligations set forth in the original order – is reviewable on its merits"). The District Court rejected this argument, distinguishing Atglen on the basis that the reopening at issue in this case was a "purely ministerial act that did not touch on the merits whatsoever." District Court Op. 19. Without reaching the question whether a "purely ministerial" reopening can be distinguished under Atglen, we will affirm its conclusion that the STB's decision in this case was unreviewable on alternative grounds.[8]

Appellants' argument fails because they are conflating separate actions taken by the STB in two separate cases. At Appellants' request, the 2008 STB Order dealt concurrently with the issues presented by the parties in two separate actions: (1) MR and NWPTA's joint Motion for Substitution (filed under STB Docket No. AB-88 (Sub-No 5X)), and (2) Appellants' Petition for Declaratory Order (filed under STB Finance Docket No. 35802). As discussed, supra, the STB denied the relief sought by Appellants in their Petition for Declaratory Order, including their implicit challenge to the 1997 STB Order,

---

[8] We may affirm the District Court on any ground supported by the record. See Travelers Indemnity Co., v. Dammann & Co., Inc., 594 F.3d 238, 256 n.12 (3d Cir. 2010).

which the STB treated as a motion to reopen on the grounds of material error. In the same opinion the STB also granted MR and NWPTA's motion for substitution of interim trail user, which had originally been filed as a separate action. The Appellants opposed the Motion for Substitution in a separately filed reply, see Appellee's Supplemental Appendix 230-242, and the two cases were never consolidated. Although both actions arise out of the same facts and circumstances, they were filed as separate actions and raise distinct claims. The STB's limited reopening of the 1990 NITU in the substitution action does not make the STB's decision not to reopen proceedings in the separately filed declaratory action open to review. Appellant presented no new evidence or allegations of changed circumstances in support of its argument before the STB. Accordingly, we will affirm the District Court's conclusion that the STB's denial of Appellant's motion to reopen based on material error is unreviewable. See BLE, 482 U.S. at 280.

We will also affirm the District Court's conclusion that the STB did not act arbitrarily or capriciously in determining that NWPTA and MR had not violated 49 C.F.R. § 1152.29(f) by entering into the Donation Agreement. See Motor Vehicle Mfrs., 463 U.S. at 42; 5 U.S.C. § 706(2)(A) (explaining that courts should apply an "arbitrary and capricious standard" of review to agency decisions). Section 1152.9(f) sets forth the regulatory provisions relating to the substitution of a trail sponsor. 49 C.F.R. § 1152.29(f).[9] To effect a substitution, the current and future trail sponsor must jointly file

_____

[9] The Board's role under the Trails Act is limited with respect to administering notices of interim trail use. When a request for an NITU is filed, the Board's only responsibility is to confirm that the trail sponsor agrees to assume full liability for the property during

a copy of the existing NITU and the new trail user must file a statement of willingness to assume financial responsibility. Once approved, the Board is required to reopen the abandonment proceeding, vacate the existing NITU, and issue an appropriate replacement NITU. 49 C.F.R. § 1152.29(f)(2).

The Donation Agreement provided that MR's "obligation to transfer the property [was] contingent on . . . completion of all necessary railbanking documents and filings with the [STB] to preserve the property's interim trail status." Donation Agreement at ¶ 5. The Donation Agreement further provided that until such time as the proper STB authorization could be obtained, NWPTA would lease and maintain the right-of-way, pay the real estate taxes, and indemnify MR for any liability associated with the Trail's use. The STB reviewed the Donation Agreement and concluded that 49 C.F.R. § 1152.29(f) had not been violated because the agreement explicitly conditioned the proposed transfer on obtaining Board approval, leaving MR ultimately responsible for the Trail until the requisite approval was procured. We agree that the STB's decision was well-reasoned and neither arbitrary nor capricious.

The District Court also affirmed the Board's conclusion that MR's single tax delinquency did not constitute an abandonment of the Trail because Appellants failed to make a specific showing that the trail sponsor had not met its financial obligations

---

the interim trail use and to keep the property available for reactivation of rail service. 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(a)(3). The Board is then required by statute to "reopen the abandonment or exemption proceeding, vacate the existing NITU or CITU; and issue an appropriate replacement NITU or CITU to the new trail user." 49 C.F.R. § 1152.29(f)(2).

pertaining to the Trail. The Appellants' evidence that MR failed to meet its financial responsibilities consisted of one letter from the Girard County Tax Collector, dated November 10, 1999, stating that MR had not paid taxes for property in that county in 1998. The STB concluded that without evidence that STB was in arrears regarding any financial obligation relating to the right-of-way, the letter was insufficient to support a finding that MR had failed to meet its financial and legal obligations pertaining to the trail. We agree with the District Court that it was not arbitrary or capricious for the STB to hold that allegedly missing one property tax payment over 10 years ago was insufficient to demonstrate a failure to meet financial obligations. See Jost v. S.T.B., 194 F.3d 79, 89-90 (D.C. Cir. 1999).[10]

IV.

For the foregoing reasons, we will affirm the decision of the District Court.

---

[10] We have considered the Appellant's remaining argument but find them unpersuasive.