SCIRICA, Circuit Judge,
concurring in part, dissenting in part.
The decision to vacate and remand the 2008 newspaper/broadcast cross-ownership rule (“NBCO rule”) preserves an outdated and twice-abandoned ban,[1] adopted in 1975, on common ownership of a broadcast station and a daily newspaper in the same market. Because I believe the Federal *473 Communications Commission provided adequate notice and opportunity to comment on the 2008 NBCO rule, I respectfully dissent from the Court’s holding that the FCC failed to satisfy the Administrative Procedure Act’s requirements. Moreover, because I believe potential objections to a new NBCO rule or new Diversity Order need not be reviewed by this panel, I also dissent from the decision to retain jurisdiction over parts of the ongoing 2010 Quadrennial Review. I would affirm the 2006 Quadrennial Regulatory Review, 23 FCC Red. 2010 (2008) (“2008 Order”), in its entirety, permit the 2008 NBCO rule to go into effect, and allow the 2010 Quadrennial Review to run its course.
In July 2006, the FCC issued a Further Notice of Proposed Rulemaking (“2006 FNPR”) stating the FCC was reconsidering the NBCO rule and seeking comment on cross-ownership limits. See Further Notice of Proposed Rulemaking, 21 FCC Rcd. 8834 (2006). The 2006 FNPR asked: “Should limits vary depending upon the characteristics of local markets? If so, what characteristics should be considered, and how should they be factored into any limits?” Id. at 8848, ¶ 32. If this were the first notice in which these issues were raised, more detail would likely have been required. But the context in which these questions were asked was clear: The FCC announced it was reconsidering its cross-ownership rules not only in the normal course of its own periodic review, but also in response to our remand, see Prometheus Radio Project v. FCC (Prometheus I), 373 F.3d 372 (3d Cir.2004), of the FCC’s cross-media limits promulgated following the 2002 Biennial Regulatory Review. See 2006 FNPR, 21 FCC Red. at 8848, ¶ 32 (“We invite comment on all of the issues remanded by the Prometheus court regarding cross-ownership.... To the extent that we will not use the [Diversity Index] to justify changes to the existing cross-ownership rules, we seek comment on how we should approach cross-ownership limits.”); see also 2002 Biennial Regulatory Review, 18 FCC Red. 13620 (2003) (“2003 Order[1]’). Accordingly, and as is well known to the parties involved, the NBCO rule is not just the product of one isolated rulemaking, but is instead the outcome of an iterative and interactive process of statutorily prescribed agency review of broadcast media regulation and our judicial review of that agency action.
In Prometheus I, we remanded the cross-media limits promulgated in the 2003 Order. The FCC had previously initiated proceedings on the NBCO rule reviewed in Prometheus I by issuing a Notice of Proposed Rulemaking (“2001 NPRM”). See Cross-Oumership of Broadcast Stations and Newspapers; Newspaper/Radio Cross-Ownership Waiver Policy, 16 FCC Red. 17283 (2001). It sought comment on the possibility of taking a case-by-case approach to determine whether a proposed cross-ownership combination would be in the public interest. See 2002 Biennial Regulatory Review, 17 FCC Red. 18503, 18506, ¶ 7, 18538-39, ¶¶ 106-11 (2002). Although in the 2003 Order the FCC concluded “that, on balance, the benefits of precision that case-by-case review of every transaction would provide were outweighed by the benefits of bright-line rules,” 2008 Order, 23 FCC Red. at 2041, ¶ 54 (citing 2003 Order, 18 FCC Red. at 13645, ¶ 82), on remand the FCC “[e]stablish[ed] presumptions, as opposed to a bright line [rule,] allowing] for the evaluation of proposed newspaper/broadcast combinations under defined circumstances on a case-by-case basis,” id. at 2039-40, ¶ 52.
The presumptions adopted in the 2008 Order were, in substantial part, proposed in the 2001 NPRM. The 2001 NPRM proposed an NBCO rule that would allow a newspaper/broadcast combination in cir *474 cumstances in which the radio or television station was not among the top four ranked stations in the market and at least eight media voices would remain. The 2001 NPRM stated:
Another option for modifying the newspaper/broadeast cross-ownership policies would be to combine the “market concentration” and “voice count” standards. Under this approach, a combination would be permitted so long as both parties do not have a certain market share (combined or individual), and so long as a minimum number of voices would remain in the market post-merger. This approach would be consistent with the recently revised TV duopoly rule, which permits common ownership of two TV stations within the same [Designated Market Area (“DMA”) ] if both are not ranked among the top four in the market, and at least eight independently owned TV stations would remain in the DMA post-merger.
2001 NPRM, 16 FCC Rcd. at 17300, ¶46. Moreover, the 2001 NPRM also discussed whether the FCC should presume it is in the public interest in certain circumstances to waive any ban on newspaper/broadcast cross-ownership, “such that combinations would be permitted if one of the parties to the combination has failed, is failing, or if the combination would result in new service.” Id. at 17301, ¶ 49.
Following our decision in Prometheus I remanding the cross-media limits in the 2003 Order, the FCC established presumptions similar to those proposed in the 2001 NPRM. The FCC concluded:
[A] waiver of the cross-ownership ban is in the public interest in the following circumstances: when a daily newspaper seeks to combine with a radio station in a top 20 DMA, or when a daily newspaper seeks to combine with a television station in a top 20 DMA and (1) the television station is not among the top four ranked stations in the market and (2) at least eight “major media voices” would remain in the DMA.
2008 Order, 23 FCC Red. at 2022-23, ¶ 20. Moreover, for DMAs outside of the top 20, the FCC presumes that a newspaper/broadcast combination is not in the public interest unless: (1) the newspaper or broadcast station is “failed” or “failing” or (2) the proposed combination results in a new source of a significant amount of local news programming. Id. at 2047-49, ¶¶ 65-67.
On the facts of this case, it is difficult to believe that Citizen Petitioners, who participated in all prior proceedings, were not fairly apprised of either “the terms or substance of the proposed rule” or “a description of the subjects and issues involved” as required by the Administrative Procedure Act (“APA”). 5 U.S.C. § 553(b)(3); see NVE, Inc. v. Dep’t of Health & Human Servs., 436 F.3d 182, 191 (3d Cir.2006). Citizen Petitioners were given “fair notice,” Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 174, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007), of all significant subjects and issues involved, see Fertilizer Inst. v. Browner, 163 F.3d 774, 779 (3d Cir.1998). The 2006 FNPR made clear that, on remand from Prometheus I, the FCC was planning a significant revision of the NBCO rule noticed by the 2001 NPRM and appearing in the 2003 Order, and was again considering tailoring cross-ownership limits to local markets. See 2006 FNPR, 21 FCC Rcd. at 8848, ¶ 32. Because the general framework of the 2008 NBCO rule was actually proposed in the 2001 NPRM of the subsequently remanded 2003 cross-ownership rules, interested parties would not have had to “divine [the FCC’s] unspoken thoughts,” CSX Transp., Inc. v. Surface Transp. Bd., 584 F.3d 1076, 1080 (D.C.Cir.2009) (internal quotation marks omitted). Instead, Citizen Petitioners “should have anticipated *475 the [FCC’s] final course in light of the initial notice,” Covad Commc’ns Co. v. FCC, 450 F.3d 528, 548 (D.C.Cir.2006) (internal quotation marks omitted), and consequently I cannot conclude the 2008 NBCO rule was not at least a “logical outgrowth of the rulemaking proposal and record,” NVE, 436 F.3d at 191. Accordingly, I respectfully dissent from the Court’s decision to remand the NBCO rule for failure to comply with the APA’s notice and comment requirements.
For the foregoing reasons, I would uphold the FCC’s NBCO rule and allow the 2010 Quadrennial Review to proceed. In all other respects, I concur in the majority opinion.

. The FCC first declined to retain the ban in its 2003 Order, then again in its 2008 Order.